UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA         :
        :
  -v.-        :
        :   07 Cr. 1131 (JGK)
PAUL HORSCROFT,        :
        :
    Defendant.      :
        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## SUPPLEMENTAL SENTENCING MEMORANDUM

PREET BHARARA
United States Attorney for the Southern
District of New York
Attorney for the United States
of America

AVI WEITZMAN
DAVID B. MASSEY
Assistant United States Attorneys,
    Of Counsel.



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

_____

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York  10007*

February 15, 2010


**BY HAND**
The Honorable John G. Koeltl
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

> Re:  **United States v.  Paul Horscroft,**
>       **07 Cr. 1131 (JGK)**

Dear Judge Koeltl:

The Government respectfully submits this letter in connection with the sentencing of the defendant, which is currently scheduled for February 26, 2009, at 2:30 p.m., and in response to the questions posed by Your Honor at the Court conference on January 15, 2010.  Specifically, at the January 15 conference, the Court noted several issues that were of concern:

- that the Parties seemed to disagree about the sentencing Guidelines range applicable to the defendant's conduct, and in particular, the loss amount reasonably foreseeable to the defendant;

- that defense counsel's sentencing submission appeared to undercut the sworn testimony of the defendant at the trial of Kevin Lynch regarding, in particular, the services provided by Horscroft to Gartner, including the equipment rented to Gartner; and

- whether the Parties had reached agreement regarding the forfeiture and restitution to be imposed in connection with the defendant's sentencing;

After additional discussions between the Government and the defense, the Parties have reached agreement as to each of these issues, which are addressed *seriatim* below.  As a result, it does not appear that a *Fatico* hearing is necessary in this case.

The Agreed-Upon Guidelines Calculation

With respect to the Guidelines calculation for Horscroft, the Parties are in agreement that the Guidelines calculation in the Pre-Sentence Investigation Report ("PSR") calculated by the Probation Office is incorrect in one respect. Specifically, Paragraph 34 of the PSR states that an additional 18 levels should be added to the base offense level of 8 pursuant to U.S.S.G. §§ 2B4.1(b)(1)(B) and 2B1.1(b)(1)(J) "because the improper benefit totaled $3,102,024.07." The Government and the defendant, however, believe that the "improper benefit" that was conferred upon Horscroft as a result of the criminal scheme was approximately $1.046 million, and thus, under U.S.S.G. §§ 2B4.1(b)(1)(B) and 2B1.1(b)(1)(I), only 16 levels should be added to the base offense level.

Section 2B4.1 of the Guidelines governs commercial bribery and kickback schemes, and provides for a base offense level of 8 and an additional enhancement (from the table in Section 2B1.1) of "the greater of the value of the bribe or the improper benefit to be conferred." Application Note 2 to Section 2B4.1 defines the "value of the improper benefit to be conferred" as "the value of the action to be taken or effected in return for the bribe," and further references the commentary to U.S.S.G. § 2C1.1, which, in turn, defines "the value of the benefit received or to be received" as "the net value of such benefit." *See* U.S.S.G. § 2C1.1 (Application Note 3). As an example, the commentary further provides that a "$150,000 contract on which $20,000 profit was made was awarded in return for a bribe; the value of the benefit received is $20,000." Accordingly, in calculating the value of the benefit received by Horscroft, the Parties deducted Horscroft's reasonable business expenses from Horscroft's gross receipts from Gartner as a result of Horscroft's bribes to Gartner employees. As a result of the commercial bribery scheme, Gartner paid Horscroft's companies (Virtual Office Team and Strategic Media) approximately $1,703,478. These payments purportedly were provided for services provided by freelance employees hired by Horscroft and the rental of certain equipment to Gartner's DMD Group. Of that amount, Horscroft paid approximately $494,299 in salary to his freelancers; $150,896 to lease office space and for office expenses; and $12,000 to purchase the rental equipment. Thus, the total value of the benefit conferred upon Horscroft (e.g., his profit) as a result of the bribes is estimated at approximately $1,046,283.[1]

It also should be noted that neither the Government nor the defendant believe that the value of the benefit conferred upon co-defendant Wilfredo Hernandez should be attributed to Horscroft. From the Government's debriefing of Horscroft and his testimony at trial, it is clear that Horscroft's bribes and Hernandez's bribes were not "jointly undertaken criminal activity," as defined in U.S.S.G. § 1B1.3, since Horscroft knew neither that Hernandez was working for the DMD Group nor that Hernandez was paying bribes to Cardona and Lynch. Nor were Hernandez's bribes reasonably foreseeable to Horscroft. Accordingly, the Parties agree that the

---

[1] Whether the "value of the improper benefit to be conferred" upon Horscroft was the gross receipts to Horscroft ($1.7 million) or the net profit ($1.046 million), no more than 16 additional offense levels are warranted under U.S.S.G. §§ 2B4.1(b)(1)(B) and 2B1.1(b)(1).

calculation of the "value of the improper benefit conferred" upon Horscroft should include only his own profits, not the profits to Hernandez that resulted from Hernandez's bribes to Gartner employees.

The Services Provided by Horscroft to Gartner

In the defendant's sentencing submission dated January 4, 2010, Horscroft claims that "the majority of the work accomplished by Defendant Horscroft's companies for Gartner was legitimate, valuable work for which Gartner paid normal and ordinary industry rates and charges." In its January 14, 2010 letter, Gartner "strenuously disputes" that contention, claiming that "Gartner has no reason to believe that any legitimate and needed services were provided to Gartner in exchange for the[] payments" to Horscroft's companies. The Government does not entirely agree. Based on many hours of meetings with Horscroft and the Government's independent investigation, including the review of Gartner e-mails, it does appear that Horscroft provided some services to Gartner. That said, the defendant's assertion that a *majority* of Horscroft's work was "legitimate" and "valuable" cannot be confirmed by the Government as it is impossible to quantify the precise value to Gartner of those services. More to the point, though, whether or not Horscroft provided legitimate services to Gartner, Horscroft's services were the result of bribes that he paid to Cardona and Lynch. The crimes to which Horscroft pled guilty do not turn on whether the services provided were illegitimate and unnecessary, or valuable and reasonably-priced.

In addition, the pertinent analysis for the Guidelines determination is not the value of the services provided, but the costs of those services. As discussed above, the Guidelines calculation already deducts the costs Horscroft incurred in providing services to Gartner from the gross receipts Horscroft's companies received from Gartner. That computation does not incorporate an analysis of the value of the services to Gartner or whether those services were in fact needed. Since the Guidelines analysis already deducts the costs of services from the ultimate loss amount calculation, there is no need to make a separate determination of the precise value of any services to Gartner.

While a precise determination of the value of Horscroft's services is not necessary to determine the loss amount, at the January 15 conference, the Court indicated that the disagreement between Gartner and Horscroft may be pertinent to the Court's analysis of the defendant's acceptance of responsibility. Rather than reflect a lack of acceptance of responsibility, the Government submits that the dispute between the defendant and Gartner may be based on the defendant's lack of knowledge of the full scope of the fraud committed by Cardona and Lynch, as well as Gartner's lack of knowledge of the actual services rendered by Horscroft's companies, which be the result of Cardona's destruction of records at Gartner. As Horscroft testified at trial, Cardona destroyed many of the records relating to the work performed by Horscroft's companies and invoices submitted by those companies after Gartner started investigating the DMD Group:

"Q: Did you have any conversations with Benjamin Cardona as to what he did with the 2004 invoices from Virtual Office Team?

A: Yes, I did.

Q. What, if anything, did he indicate he had done?

A. He indicated that he had destroyed them."

(Trial Tr. at 459.)

Forfeiture and Restitution

The Government and defendant agree to abide by the terms of the plea agreement, which contains provisions regarding both forfeiture and restitution. In his plea agreement, the defendant agreed to forfeit to the United States a sum of money equal to at least $3.1 million dollars in United States currency. Such forfeiture should be imposed joint and several to the forfeiture imposed upon the other convicted defendants in this case. The Government will provide proposed forfeiture orders for the Court's consideration in advance of Horscroft's sentencing.

In addition, the plea agreement provides that the defendant "agrees not to appeal any restitution order that is equal to or less than $906,000." Here, the loss to Gartner as a result of Horscroft's conduct is estimated to be approximately $1,046,283, which represents the total value of the benefit conferred upon Horscroft as a result of the bribes he paid. Accordingly, there is more than ample basis for the Court's entry of an order of restitution of $906,000.

Respectfully submitted,

PREET BHARARA
United States Attorney


By: /s/ Avi Weitzman
David B. Massey
Avi Weitzman
Assistant U.S. Attorneys
(212) 637-2283/1205

cc:     John Nicholas Ianuzzi, Esq. (By fax)
Wanda Whitney, United States Probation Officer